UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

IN RE:

HNRC DISSOLUTION CO., f/k/a
Horizon Natural Resources
Company, et al.                                         CASE NO. 02-14261


GEOFFREY L. BERMAN,
solely in his capacity as the
Liquidating Trustee of the
HNR Liquidating Trust                                   PLAINTIFF


VS.                                                     ADV. NO. 04-1677


KINDER MORGAN OPERATING L.P. "B"                        DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on the Defendant's Motion for Summary Judgment, or in the Alternative, Request for Jury Trial. The Plaintiff filed his Response to the Defendant's Motion for Summary Judgment, and the Defendant's Reply to Plaintiff's Response. The matter was heard on August 2, 2005, and taken under consideration for decision. The Plaintiff's Complaint herein seeks recovery of $824,043.40 from the Defendant pursuant to Bankruptcy Code sections 544, 547, and 550 and K.R.S. 378.060. The Defendant maintains that it has a complete defense to the Plaintiff's demand pursuant to section 547(c)(2). This court has jurisdiction of this matter pursuant to Judicial Code section 1334(b); it is a core proceeding pursuant to section 157(b)(2)(F).

1.  Factual background

1

As set out by the Defendant, its predecessor in interest, Cora Dock Corporation, and Zeigler Coal Company, a predecessor in interest to one of the former Debtors, entered into a storage and transfer agreement in 1981. At some point, this agreement was amended (collectively, "the Agreement"). The Agreement provides that the Defendant, which is in the business of providing barge and rail terminals and public warehousing for metals, steel products and general commodities, would unload, store and/or transfer coal to barges for the Debtor. The contract between the Defendant and the Debtor related to a contract between the Debtor and Tampa Electric Company. The Debtor agreed to pay the Defendant for services rendered pursuant to the Agreement within 30 days from the invoice date.

The Defendant states that it and its affiliates own and operate more than 70 terminals nationwide. The Defendant provided affidavits of several of its employees in regard to payment for its services. Payment for terminal and warehousing services may be 30-45 days past the invoice date (Affidavits of Troy Clendenin, Louis Zimmerman, and Kristin Tatum). Payment due date is determined in the industry by reference to the contract terms and not by computer-generated invoices (Clendenin Aff.). The invoices placed in evidence here carry a payment due date ten days from the invoice date and state the terms are "net 10 days from invoice date." The computer system used by the Defendant to generate invoices and track payments was changed in 2002 to automatically generate an invoice with a 10 day payment due term, irrespective of the contract payment terms (Tatum Aff.).

The alleged preferential payments were made between August and October 2002. For all these payments, the interval between the due

date and the date paid ranges from a low of 11 days to a high of 19 days.  The interval between the invoice date and the date paid ranges from a low of 22 days to a high of 29 days.  A chart prepared by the Defendant shows that nine of the subject payments took place in the 21-25 day range and five in the 26-30 day range from date of invoice.  The chart also shows 434 payments made by the Debtor "in Ordinary Course of Business" during a seven year period.  These payments were made anywhere from a five to ten day range to over 40 days from date of invoice, with 174 of them being made in the same ranges as the subject payments.

A table prepared by the Defendant takes the Debtor's payment history back to February 1997, and supports the information provided in the chart.  Picking up this payment history in November 2000, approximately two years before the former Debtors' cases were filed, the longest period from invoice to payment was 43 days in March 2002.  The shortest period from invoice to payment was eight days in May 2002.  Of the 66 payments made in the year 2001 (the year before the invoices were changed to a ten day payment term), six were made more than 30 days from date of invoice.  Almost half the payments (28) were made 20 days or less from date of invoice.

    2.    Discussion

Bankruptcy Code section 547 provides in pertinent part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property -
  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
  (3) made while the debtor was insolvent;
  (4) made -
    (A) on or within 90 days before the date of the filing

```
           of the petition; or
                (B) between 90 days and one year before the date of the
           filing of the petition, if such creditor at the time of such
           transfer was an insider; and
              (5) that enables such creditor to receive more than such
           creditor would receive if -
                (A) the case were a case under Chapter 7 of this title;
                (B) the transfer had not been made; and
                (C) such creditor received payment of such debt to the
           extent provided by the provisions of this title.
           (c) The trustee may not avoid under this section a transfer-
            . . . .
             (2) to the extent that such transfer was--
                 (A) in payment of a debt incurred by the debtor
                 in the ordinary course of business or financial
                 affairs of the debtor and the and the transferee;
                 (B) made in the ordinary course of business of the
                 debtor and the transferee; and
                 (C) made according to ordinary business terms;
```

The trustee must prove every element of subsection (b) in order to prevail.

    A.   <u>The section 547(c)(2) defense</u>

The Defendant has not challenged the preferential nature of the subject payments, but asserts the defense found in section 547(c)(2). In order to determine if the ordinary course of business defense applies, the court must engage in a "peculiarly factual analysis." *Waldschmidt v. Ranier (In re Fulghum Construction Corp.)*, 872 F.2d 739, 743 (6th Cir. 1989). In order to prevail under section 547(c)(2), the Defendant must prove each element by a preponderance of the evidence. 11 U.S.C. § 547(g).

The application of section 547(c) has been the subject of much debate, and has generated several significant cases from the Sixth Circuit. The requirements for demonstrating the exception were set out in *Logan v. Basic Distribution Corp. (In re Fred Hawes Organization, Inc.)*, 957 F.2d 239 (6th Cir. 1992). A transferee may not use the same standard to prove all the elements of section

4

547(c)(2). Subsection (A) is demonstrated relatively easily by a showing that each party was engaged in its usual business when the debt was incurred and the transfer took place. At issue here are 14 payments the Debtor made to the Defendant from August 21, 2002 to October 29, 2002 for services rendered under the Agreement. As such, there is no doubt that the requirements of subsection (A) have been satisfied. Subsection (B) has been determined to be the "subjective" prong, while subsection (C) is the "objective" prong.

The subjective prong requires proof that the transaction between the debtor and the transferee was ordinary as to them; the objective prong requires proof that the transaction was ordinary in relation to standards prevailing in the relevant industry. *See also Jones v. United Sav. and Loan Ass'n (In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.)*, 9 F.3d 680, 682 (8th Cir. 1993)(transferee must prove the three statutory elements by a preponderance of the evidence); *WJM, Inc. v. Massachusetts Dept. of Pub. Welfare*, 840 F.2d 996, 1010-11 (1st Cir. 1988) (each of the three elements must be satisfied by the creditor); *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3rd Cir. 1989) (creditor must prove all three "statutory conjunctive elements"); *Hovis v. Stambaugh Aviation, Inc. (In re Air South Airlines, Inc.)*, 247 B.R. 165 (Bankr. D.S.C. 2000) (subsections (B) and (C) provide subjective and objective tests which require separate analyses).

The *Fred Hawes* court elaborated on the elements required to establish subsection (B), noting that such a determination required a fact specific analysis as set out in *Fulghum, supra*. The court further noted that in making such an analysis, courts examine several

factors, "including timing, the amount and manner a transaction was paid and the circumstances under which the transaction was made." (quoting from *Yurika Foods Corp. v. UPS (In re Yurika Foods Corp.)*, 888 F.2d. 42, at 45 (6th Cir. 1989)). *See also Brown v. Shell Canada, Ltd. (In re Tennessee Chem. Co.)*, 112 F.3d 234, 237 (6th Cir. 1997).

While paragraphs (A) and (B) of section 547(c)(2) are subjective components, paragraph (C) imposes an objective test. *Fred Hawes Org., Inc.*, 957 F.2d at 243-44. "The objective prong (subsection (C)) requires proof that the payment is ordinary in relation to the standards prevailing in the relevant industry." *Id.* at 244 (citation omitted). The entire industry must be considered, not just the defendant's dealings with its customers. *Id.* at 245-46. In this circuit, "'ordinary business terms' means that the transaction was not so unusual as to render it an aberration in the relevant industry." *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 818 (6th Cir. 1996). The transfers need not be consistent with a majority or even a significant percentage of the industry's transactions. *Id.* The longer the relationship between the parties the greater the permitted variance from the industry norm. *Advo-System, Inc. v. Maxway* Corp., 37 F.3d 1044, 1049 (4th Cir. 1994) (citing *Fiber Lite Corp. v. Molded Acoustical Products, Inc. (In re Molded Acoustical Products, Inc.)*, 18 F.3d 217 (3d Cir. 1994)). Further, where payments are demonstrated to be timely, "[t]his would seem to negate the need for an 'industry standard' analysis as the court presumes that timely payments are the required norm within the . . . . industry." *Fitzpatrick v. Rockwood Water, Wastewater and Natural Gas Sys. (In re Tennessee Valley Steel*

*Corp.)*, 201 B.R. 927, 938 (Bankr. E.D. Tenn. 1996)

  B. <u>The section 547(c)(2)(B) component</u>

  The issue under this component is whether the subject payments satisfy the requirement that they were made in the ordinary course of business of the Defendant and the Debtor, the so-called "subjective" component.  In his Response the Plaintiff has raised the question of a change in payment terms, based on the due date and terms shown on the 14 invoices related to the subject payments.  The Plaintiff maintains that the ten day invoices establish that the subject payments were not made according to contract terms, and that it was not the invoices that changed the terms, but the Defendant's acquiescence to the change which altered the contract and rendered the payments preferential.  The Plaintiff further maintains that the Debtor's payment history before, during, and after the preference period supports his position.

  The court does not agree that the payment history supports the Plaintiff's position.  The Plaintiff argues that it is illogical for a company to pay its invoices early when it can earn interest on the funds it has paid.  If the payments made during the preference period were the only instances of early payment, or if all the payments made during the preference period were made in ten days or less, this argument would be persuasive.  The Debtor's payment history shows, however, that there were many instances of payments being made both early and late, but well within the parameters set out in the Defendant's affidavits to be considered timely.  Further, there are no instances of payments made in ten days or less during the preference period.  The intervals between invoice date and payment date during the preference period are consistent with the intervals found

7

throughout the payment history, and are not such as would make them the obvious product of pressure to pay earlier. The court believes that the Defendant has satisfied the requirements of section 547(c)(2)(B).

    C.   <u>The section 547(c)(2)(C) component</u>

The Defendant contends that prevailing under section 547(c)(2)(B) negates the need for an "industry standard" analysis because it may be presumed that timely payments are the required norm within an industry. *See In re Tennessee Valley Steel Corp.*, 201 B.R. at 938. The court agrees with this assessment. Having demonstrated that the payments made by the Debtor during the preference period were consistent with its payment history, the Defendant has in effect demonstrated that the Debtor's payments were timely, and the court need not engage in a specific section 547(c)(2)(C) analysis.

The court therefore concludes that the Defendant has satisfied each element of section 547(c)(2), and that it has a complete defense to the Plaintiff's preference claim. An order in conformity with this opinion will be entered separately.

Copies to:

Chrisandrea Turner Ingram, Esq.
Lee A. Webb, Esq.
Patricia Williams Prewitt, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*William S. Howard*
**Bankruptcy Judge
Dated: Friday, December 09, 2005
(wsh)**